D. VOGELSANG ET AL. V. W. W. DOUGHERTY ET AL.

1. ESTATES OF DECEASED SOLDIERS.—If the decedent was of the class of persons whose estates were protected in the.act of May 18, 1838, (Hart. Dig., art. 984,) and in the act of January 14, 1841, (Paschal's Dig., art. 1400,) as "volunteers from a foreign country, who may have fallen in the battles of the Republic," &c., it should be held that a grant of administration upon his estate, and all proceedings had therein, touching the administration, were absolutely void.

2. JURISDICTION OF PROBATE COURTS—EXCEPTIONS.—The acts forbidding the grant of administration upon the estates of deceased soldiers, create exceptions to the general power and jurisdiction of the Probate Courts. To have the benefit of the exception, the facts relied on, as avoiding the jurisdiction, should be clearly established, the presumption being in favor of the jurisdiction.

3. SAME—COLLATERAL ATTACK—STALE DEMAND.—When the general jurisdiction. assumed by the Probate Court, to grant letters of administration, is attempted to be collaterally impeached, thirty-one years after its assumption, and more than twenty years after one of plaintiffs came to Texas to look after the estate, by proving facts,

avoiding the jurisdiction, (as that the deceased was a soldier, &c.,) and when the lands have, subsequent to sale under such administration, been bought and sold by innocent parties, and in which time, part has a second time passed through the Probate Court, it seems, that, even had the proof of the facts alleged been clear, the claim of the heirs, attacking such administration, should be held a stale demand.

4. CITIZENS OF TEXAS NOT INCLUDED IN SAID ACT.—The exception provided in said acts against the grant of administration in estates of deceased soldiers, did not include citizens of Texas; and it was error to instruct the jury that said acts were applicable alike to all volunteer soldiers, whether citizens, or from a foreign country.

5. FACT CASE.—See facts held insufficient evidence that a party was a "volunteer from a foreign country, who had fallen," &c.

6. STATUTES CONSTRUED.—Act of May 18, 1838, Hart. Dig., 984; act of December 24, 1838, Hart. Dig., 989; act of January 14, 1841, Hart. Dig., 1503, Paschal's Dig., 1400.

APPEAL from Colorado. Tried below before the Hon. Livingston Lindsay.

The facts are sufficiently given in the opinion.

*Delaney & Cook,* for appellants.

*F. Barnard,* also for appellants.

*John T. Harcourt,* for appellees.—I respectfully submit that there can be no grounds for misconception as to the legislative intention, in all the acts of the Congress of the Republic in securing to the heirs and next of kin of her deceased soldiers, the personal enjoyment of the gratuity of the Government.

The first act of 18th May, 1838, to provide for the settlement of deceased soldiers' estates, (Hart. Dig., art. 984,) was in full force until the passage of the act of 17th December, 1851. (Paschal's Dig., art. 1400.)

The third section of the act of 1838 (Hart. Dig., art. 986) prohibited the sale of any of the effects of any deceased soldier, unless the order of sale was approved by the Secretary of War.

It cannot be pretended, in the present case, that Dougherty was a citizen soldier, in the full exercise of his rights as a citizen, at the time he was shot by the Mexicans, while a prisoner of war, so as to bring him within the exception of the act of December 24, 1838. (Hart. Dig., art. 989.)

By the act of 14th January, 1841, (Paschal's Dig., art. 1398,) it was manifestly the intention to prohibit administration on the estate of any volunteer from a foreign country who lost his life in the military service of the Republic, unless it was by the authority of the heirs or next of kin; and to prohibit the sale of the lands of a deceased soldier without the consent of the heirs.

This was the leading idea. It was an act of justice, as well as an act of patriotic prudence, to keep men in the field, with the pledge of the Government that, if they lost their lives in her service, their heirs or next of kin should not be robbed of their lands, under the forms of probate sales.

It was legislative notice to land speculators that they could not remain at home and watch the Probate Courts, and purchase for a trifle, valuable lands that were bought with the best blood of the Texas veterans.

The opposing counsel rest their defense upon the technical grammatical construction of the language used in this act. They contend that, by the use of the words in the past tense— "may have fallen or died"—the law was only intended to apply to a class of volunteers who were killed or died before the passage of the act of 14th January, 1841. This construction would impute to the law-makers an unjust discrimination in behalf of certain volunteer soldiers.

The struggle for independence was still impending, and volunteer soldiers were needed to drive back the Indians, as well as to repel the invasion of Mexicans; and the same reason existed for "protecting the rights of the heirs and next of kin" of all soldiers. The act of 17th December, 1851, (Paschal's Dig., art. 1400,) leaves no ground for doubt as to the policy and intention of the act.

The preamble recites, that unauthorized persons have administered upon many estates of deceased soldiers, and sold the lands intended to be granted to the heirs of such soldiers, contrary to the intent of said acts.

It proceeds, then, by the first section, to repeal the acts of May 18, 1838, and December 24, 1838, and reaffirms the act of January 14, 1841, as having been all the time in full force and effect.

The sale of the 1,280 tract of land was made by Perry, as administrator of Dougherty, on the 1st day of January, 1850, contrary to the provisions of the act of 1838, and also contrary to the act of 1841.   *   *   *

The sale was after the passage of the act of 17th December, 1851.   By the third section of that act, the sale of the land, or land claims of any deceased soldier, was prohibited, without the consent of the heirs of such deceased soldier.

In the case of Harris v. Graves, 26 Tex., 580, the court say: "The administrator, by the plain terms of the statute, had no power to sell the lands of the deceased without the consent of the heirs, and the court had no power to grant a valid decree of sale," &c.   (Withers v. Patterson, 27 Tex., 493.)

It was a question for the jury to determine the fact— whether B. M. Dougherty was a volunteer soldier and died in the service of the Republic of Texas.   The proof was abundant to authorize their verdict.

[Counsel discussed the testimony.]

But the pay for improvements, as allowed by the jury, makes it a costly victory, and we have assigned cross-errors, to be considered by the court, if it can be corrected without remanding the cause.

The finding of the jury is, in effect, that the sale of the land was in fraud of the law, and absolutely null and void.

In the case of Hatchett v. Conner, 30 Tex., 113, Judge Coke observes: "It is difficult to perceive how a party can honestly believe that his title is good, or how his possession can

be in good faith, when he is unable to trace his title back to the Government—the only source of title to land. While a defective or irregular apparent title may be the basis of a recovery for improvements made in good faith, a void title (if such an expression may be used) cannot be. (Rogers v. Bracken, 15 Tex., 568; Pitts v. Booth, 15 Tex., 454; Robson v. Osborn, 13 Tex., 298.)

In the present case, the parties could not honestly believe their title to be good. They are chargeable with notice of the acts to "protect the rights of heirs and next of kin of deceased soldiers." They were chargeable with notice that the tract of 1280 acres of land was granted to Dougherty, as a single man, for bounty land, under the act of December 4, 1837, (Hart. Dig., art. 1834,) and that he must have served twelve months or upwards in the army to be entitled to it. The administrator's report of the sale of the 1280 acres states that the land was granted for services in the army of Texas.

MOORE, ASSOCIATE JUSTICE.—This suit was brought, on the 11th day of September, 1873, by the appellee, W. W. Dougherty, in his own behalf, and as the agent for the other heirs of Burton M. Dougherty, to recover certain lands, situated in Colorado county, alleged to have been acquired by said Burton M. Dougherty, by virtue of military services rendered the Republic of Texas, now in possession of and claimed by appellants, the defendants in the District Court, through and under, as plaintiffs aver, an illegal and unauthorized administration upon his estate by the Probate Court of said Colorado county.

Although some comment is made by appellees' counsel upon the fact that no decree, confirming the sale of one of the tracts of land sued for, is found upon the minutes of the Probate Court, as it is evident, from the record, that the action was brought and tried in the court below, upon the hypothesis of the illegality of the administration, and not because of any defect or irregularity of the proceedings had

in said court, in the course of said administration, however great, it is only necessary for us at present to inquire, whether the Probate Court of Colorado county had authority to grant original administration upon the estate of Dougherty, as it did, in 1843, and letters *de bonis non*, in 1849, and whether it could confer upon the administrator last appointed, power and authority to sell the lands belonging to said estate.

The objection made to the validity of the administration, and the title of the parties claiming the land sued for under it, is, that the assumption of authority by the court to grant the administration, and order the sale of the lands belonging to the decedent, is in plain violation of the act of May 18, 1838, entitled "An act to provide for the settlement of deceased soldiers' estates," (Hart. Dig., arts. 984–8,) and that of January 14, 1841, entitled "An act to protect the heirs and next of kin to the members of the Georgia battalion, and other volunteers from foreign countries, who have fallen in the battles of the Republic, or otherwise died in the limits of the same."

It does not appear, from the record, and it was not attempted to be otherwise shown, that either of the parties to whom, at different times, letters of administration upon Dougherty's estate were committed, were the next of kin of the decedent, or that either of them produced, or had authority, from his heirs or next of kin, to take said administration on his estate. Nor can it be pretended that the court, in ordering the sale of said lands, attempted to conform its action to the provisions of said first-named act. If, therefore, decedent was of the class of persons to whose estates these acts have reference, it might, and probably should, be held, the grant of administration upon his estate by said court, and all the proceedings had therein, touching the same, were, as is insisted by appellees, absolutely null and void. But is it shown, by the record of the Probate Court, or otherwise, that Burton M. Dougherty was one of the persons to whose estates reference is had in these acts?

It must be remembered, that, by these acts, an exception is made to the general power and jurisdiction given to the Probate Court over the estates of deceased persons. And, as the court determined, as it must be presumed, correctly, until the contrary is shown, by the grant of administration, that it had jurisdiction to render the judgment and make the orders in question, the burthen of proof is unquestionably upon him who asserts their nullity. And certainly, where the want of jurisdiction, and consequent nullity of the proceedings of the court, is sought to be shown by parol, the proof should be clear and satisfactory to establish the alleged facts from which the conclusion is to be deduced. More especially must this be so, where a considerable length of time has elapsed, after the proceedings are had, before they are called in question. In this case, the general jurisdiction, assumed by the Probate Court over this estate, is attempted to be collaterally impeached, thirty-one years after its assumption, and more than twenty-five years after one of the plaintiffs, as he testifies, came to Texas to look after his brother's estate, when, as we must presume, letters of administration, illegally granted upon it, if this action has any valid foundation, had been already issued.

At that time, it certainly could have been a matter of no great difficulty to have shown, if such was the fact, that the deceased was a "volunteer soldier, from foreign countries," or whether he was a "citizen soldier, in the full exercise of his rights as such at the time of his death." (Hart. Dig., art. 989.) In view of these facts, if the evidence to support appellees' claim was clear and satisfactory, it should have been held, we think, that appellees, having permitted the land to be bought and sold by innocent parties, who had no immediate connection with the administration, and having slept upon their rights until some of it had passed the second time through the Probate Court, their claim to it at this late day should be regarded and treated as a stale demand.

But if appellees delay in asserting their claim, justly sub-

jected it to no unfavorable inference, it could not be held
that the testimony is by any means satisfactory, to establish
the essential facts which it is necessary for them to prove be-
fore they can question or impeach the grant of administra-
tion, and the order of the Probate Court for the sale of the
land sued for.    Indeed, the evidence in the record tends
strongly, if not conclusively, to repel the truth of their alleged
ground of complaint.

The act of 1841 was evidently intended for the protection
of the estates of those noble and heroic volunteers from for-
eign countries, who, through love of liberty and sympathy
for a brave and oppressed people, engaged in a seemingly
unequal struggle to free themselves from oppression and es-
tablish their independence, who had fallen in battle or other-
wise died while engaged in the sacred cause for which they
had volunteered.    It is also obvious, from the amendatory
act of December 24, 1838, that the act of May 18, 1838, had
no reference to administrations upon estates of soldiers who
were citizens of Texas when they died.    These laws were
evidently intended to protect the heirs and next of kin, and
to regulate administration upon estates of the soldiers to
whom we have just referred.    It was a sad and disgraceful
fact, of general notoriety at the time these laws were enacted,
and now a matter of historical knowledge, that there was in
our midst a few harpies, who, under color of administrations
upon the estates of the brave men who had died in aiding the
cause of a people of whom, politically, they formed no part,
and to maintain a Government to which they owed no duty,
were filching from their heirs the pittance given them by the
Government, not as compensation for their services, but in
token of its gratitude, and as a memorial of their heroism
and valor.    Under these circumstances, had not the Gov-
ernment interposed by suitable legislation for the protection
of the rights and interests of the heirs and next of kin of those
generous volunteers who had given their lives in its behalf,
it would have shown itself unmindful of the pledges offered

as an inducement for them to come to our aid, and wanting in gratitude for the services so nobly and generously rendered by them.

Great numbers, if not most of these volunteers, had, as was well known, died from disease, fallen in battle, or been foully butchered, while unarmed prisoners. With rare exceptions, their heirs and next of kin were in a foreign country. They owed no debts to citizens of Texas, and owned no property here except the lands given them by the Government. There was therefore no necessity for an administration here upon their estates, except where desired by their heirs or next of kin. But in respect to citizens of the country, all of whom were soldiers, and none were soldiers who were not volunteers, it was altogether different, and it would have, as a general rule, been unnecessary, and most singular, to have excepted their estates from the general law of administration.

The evidence offered by appellees, to prove that Dougherty came to Texas as a volunteer is, at most, loose, vague, and indefinite. None of the witnesses knew him earlier than 1837. The fact that he had a bounty warrant, shows that he had been a soldier, but certainly does not prove that he was a volunteer soldier from a foreign country. The certificate for six hundred and forty acres, given him as a headright, seems to indicate that he did not come to Texas as a volunteer soldier. At least, it is evident from it, that he did not do so prior to August 1, 1836; for, if he had, he would have been entitled to a headright for a third of a league, instead of six hundred and forty acres of land; and certainly, if he came to Texas as a volunteer soldier from a foreign country, he had ceased to be such volunteer soldier long before his death. He was living apparently as a citizen of Houston, in 1837, when we first hear of him in Texas. He removed, as early as 1838, to Colorado county, and resided there from that time until some time in 1841, in the full exercise, as far as is shown by the testimony, of all the rights of a citizen,

rendering military service, no doubt, as other good citizens, by "going out," as the witness says, whenever there was a call for soldiers. He went, in 1841, upon what is commonly called the "Santa Fe expedition;" but if this was a military expedition, authorized by the Government, (which has not been shown,) there were certainly others than volunteer soldiers accompanying it; and the inference from the testimony is, that Dougherty was one of these.

But if the testimony was sufficient to sustain the verdict, still the judgment would have to be reversed, for errors in the charge of the court, and for refusing to give some, at least, of the instructions asked by appellants. The views of the law applicable to the case already expressed obviates the necessity of comment on this subject. We will only add, that in the first paragraph of the charge, the court instructed the jury, in effect, that the laws to which we have referred were applicable alike to all volunteer soldiers, whether they were citizens or from a foreign country. The verdict of the jury was not an unreasonable conclusion, from this view of the law.

REVERSED AND REMANDED.