T. E. SHIRLEY ET AL. V. S. D. WARFIELD ET AL.

No. 2103.

1. **Jurisdiction of Probate Court—Administration—Deceased Soldier's Estate.**
   One who enlisted in the army of Texas in Kentucky in 1836, but also emigrated to Texas with his family, and after serving through the war, died here in 1839, was a "citizen soldier" and not "a volunteer from a foreign country," upon whose estate the law forbade administration without consent of the heirs.

2. **Same—Jurisdictional Facts Sufficient.**
   Where a petition for letters of administration, filed eleven years after the death of the intestate, stated that he was possessed of property and owed debts, and that the letters were applied for at the request of a creditor, such petition must be held sufficient to give the court jurisdiction, where the administration is attacked in a collateral proceeding, unless it otherwise appeared from the probate record that the administration was unauthorized.

3. **Same—Presumption as to Debts from Lapse of Time.**
   It seems that lapse of more than ten years from the date of the death of the intestate to the time of application for letters of administration on his estate, is not sufficient to raise the presumption aganist the existence of debts, so as to prevent the Probate Court from taking jurisdiction on that ground.

4. **Same—Fraud as Rendering Administration Void.**
   Where a want of jurisdiction in the Probate Court is not shown, an administration cannot be held void and subject to collateral attack on the ground of fraud, because of the fact that such fraud may be inferred from the course and result of the probate proceedings, without other proof of fraud being made.

APPEAL from Jones. Tried below before Hon. C. P. WOODRUFF.

*C. M. Christenberry,* for appellants.—1. The Probate Court of Harris County being a court of competent jurisdiction, the issuance of letters of administration upon the estate of Jas. H. Warfield deceased was conclusive evidence of such jurisdiction; and the claims of those holding title under such administration cannot be collaterally attacked. Martin v. Robinson, 67 Texas, 368; Lyne v. Sanford, 82. Texas, 58; Flumer v. Walker, 23 S. W. Rep., 1029.

2. The judgment of the Land Board of Harris County, Texas, recites, in the unconditional certificate, that Jas. H. Warfield immigrated to Texas with his family; such recital is conclusive, and cannot be set

aside in a collateral proceedings. Capp v. Terry, 75 Texas, 396; 1 Sayles' Land Law, art. 289; Merriweather v. Kennard, 41 Texas, 281-2; Storer v. Lane, 1 Texas Civ. App., 255; Burkett v. Scarborough, 59 Texas, 497; Davis et al. v. Bargas, 32 S. W. Rep., 874.

*Kirby & Kirby*, for appellees.—1. Neither the Probate Court of Harris County nor of any other county in Texas had any jurisdiction to grant administration on the estate of Jas. H. Warfield or any other volunteer from a foreign country, who had died in Texas, unless the proper authority was shown from the heirs of such deceased, and this prohibition was not limited to the property acquired for services in and for the Republic, but applied to the entire property of the deceased without regard to how the same was acquired. Hart. Dig., arts. 1053, 1054; Duncan v. Veal, 49 Texas, 603; Chinn v. Taylor, 64 Texas, 387; Paul v. Willis, 69 Texas, 264; Cattle Co. v. Boon, 73 Texas, 553; Templeton v. Cattle Co., 77 Texas, 57.

2. The court did not err in holding that "the Jas. H. Warfield to whom certificate No. 984 issued was same Jas. H. Warfield who enlisted in Kentucky as assistant quartermaster in the Texas army in 1836 and served as such in Texas from January 6, 1837, to July 1, 1837, and was a volunteer from a foreign country." Chamblee v. Tarbox, 27 Texas, 144; Railway v. Stealey, 66 Texas, 471; Lemberg v. Cabaniss, 75 Texas, 229; Robertson v. DuBose, 76 Texas 6; Baker v. McFarland, 77 Texas, 294; Leland v. Eckert, 81 Texas, 229; Fleming v. Giboney, 81 Texas, 427; Holstein v. Adams, 72 Texas, 487; 16 Am. & Eng. Enc. Law, 119, 121.

STEPHENS, ASSOCIATE JUSTICE.—The District Court entered judgment in favor of appellees as the heirs of James H. Warfield for all the land sued for except the part claimed by T. E. Shirley and L. A. Scott, upon the following conclusions of fact, which we approve, except the last clause of the second finding:

"1. The James H. Warfield survey No. 10, in Jones County, Texas, the land in controversy, made by virtue of certificate No. 984, issued by the Board of Land Commissioners of Harris County, on December 2, 1850, was patented on August 3, 1853, to the heirs of James H. Warfield, by patent No. 528, vol. 7.

"2. James H. Warfield, the party to whom the certificate above mentioned was issued, enlisted in Kentucky as assistant quartermaster in the army of Texas, in 1836, and served as such in Texas from January 6, 1837, till July 1, 1837, and was a volunteer from a foreign country.

"3. James H. Warfield, the party to whom the certificate issued, and to whose heirs the land in controversy was patented, died in Harris County, Texas, in 1839, and plaintiffs in this suit are the sole heirs of said James H. Warfield.

"4. One Aug. C. Daws, on December 16, 1850, filed in the County

Court of Harris County, Texas, his application for letters of administration upon the estate of said James H. Warfield.

"5. At the December Term of said court letters of administration were granted as prayed for by Daws.

"6. By order of said County Court said administrator sold said James H. Warfield land certificate to pay costs of administration, said sale being made to W. R. Baker, the clerk of said court.

"7. Said sale was reported to said court at its February term, 1851, and at same term approved by said court, and a deed was ordered to be made to said W. R. Baker, which was done February 25, 1851, the purchase money having been paid.

"8. Jesse M. Kirkland, through whom defendants T. E. Shirley and L. A. Scott claim an undivided one-third of the land in controversy, received a deed to said one-third of said land on February 3, 1883, which was recorded in Jones County, Texas, March 5, 1883.

"9. Defendants T. E. Shirley and L. A. Scott introduced a regular chain of deeds from W. R. Baker through Jesse M. Kirkland to themselves for one-third undivided interest in the land in controversy, which said deeds are duly recorded in Jones County.

"10. Defendants T. E. Shirley and L. A. Scott, and those under whom they claim, have had possession of one-third of the land in controversy, claiming and holding same under deeds duly registered, and paying all taxes due on same, for five years prior to the institution of this suit.

"11. Defendants other than Shirley and Scott have had no possession of the land claimed by them, but have paid taxes on two-thirds of the land in controversy for five years prior to the filing of this suit.

"12. Plaintiffs Susan V. Browder, Amanda M. Sypert, P. W. Hendrick, Bettie B. Bradley, Huldah B. Wood (by coverture), and plaintiffs Charles M. Warfield, Louis Minter Warfield, Alice Vivion Warfield, and George Merriwether (by infancy), are not affected by any statute of limitation."

From this judgment the defendants other than Shirley and Scott, deraigning title to an undivided two-thirds interest under the administration sale to W. R. Baker, prosecute this appeal. There is no evidence in the record that any of the parties claiming under said administration sale were purchasers for value, or without notice of its alleged invalidity, unless such inference be justified by the mere existence of their chain of title. The controversy, then, turns upon the effect of the administration proceeding, which culminated in that sale, as follows:

Petition, filed December 16, 1850.

"To the Hon. H. H. Allen, Chief Justice of Harris County:

"Your petitioner, A. C. Daws, represents that Jas. H. Warfield died A. D. 1839, in Harris County, intestate; that he was possessed of property and owed debts; and your petitioner further represents that he

has been requested by a creditor to apply for letters of administration on said estate, which he prays your honor to grant.

"Aug. C. Daws.

"Sworn to and subscribed, December 16, 1850.

"W. R. Baker, Clerk.

"Notice of this application was this day given by me as the law directs. December 16, 1850.

"W. R. Baker, Clerk."

### From the Minutes, December Term, 1850.

"In the matter of the application of Augustus C. Daws for the appointment of administrator of this estate, filed December 16, 1850, it appearing to the court that legal notice of the same was given as the law requires by the clerk, and no one appearing to contest and oppose the said appointment, it is therefore ordered, adjudged and decreed by the court that Augustus C. Daws be, and he is hereby, appointed administrator of this estate, with the full powers as such under the law, and subject to the orders of court."

### Oath and Bond. Filed December 30, 1850.

"I, A. C. Daws, do solemnly swear that Jas. H. Warfield died without any lawful will so far as I know or believe, and that I will well and truly administer all and singular the succession of the said deceased, and return a true inventory thereof so far as the same may come to my knowledge, and a just account of sales and of my administration as required by law.

"A. C. Daws.

"Sworn to and subscribed before me, at Houston, this 30th day of December, 1850.

"W. R. Baker, Clerk.

"The State of Texas, } "Know all men by these presents:
"Harris County.

"That we, A. C. Daws, as principal, and ——— ——— as sureties, are held and firmly bound unto the chief justice of the county of Harris in the sum of one hundred dollars, for the payment of which well and truly to be made unto the said chief justice we bind ourselves, our heirs, our executors and administrators, jointly and severally, firmly by these presents. Signed with our hands and sealed with our seals (scrawls, for seals), the 30th day of December, A. D. 1850.

"The condition of this obligation is such, that whereas the above bound A. C. Daws has been appointed administrator of the estate of J. H. Warfield, deceased, now, if the said Daws shall well and truly perform all the duties required of him under said appointment, and shall pay

all cost of court in the matter of said estate, then this obligation shall be null and void, otherwise to be .of full force and effect.

"J. De Cordova.

"Aug. C. Daws.   (Seal.)

"W. R. Baker.   (Seal.)

"Signed, sealed and acknowledged before me, at my office in Houston, this —— day of ————, 185—."

From the Minutes, December Term, 1850.

"The bond and inventory filed by the administrator of this estate is hereby approved."

"Estate of J. H. Warfield, Deceased.  Petition for Sale.  Filed December 31, 1850.

"To the County Court of Harris County:

"Your petitioner, A. C. Daws, administrator of estate of J. H. Warfield, deceased, represents that all the property of said estate consists of a 640 acre headright certificate issued to deceased by the Commissioners of Harris County, No: 984, dated December 2, 1850, and the conditional certificate; that costs are due to the officers of court in said estate for about seventy-five dollars.  He prays therefore for an order to sell said land certificates.

"Aug't C. Daws.

"Sworn to and subscribed, December 31, 1850.

"W. R. Baker, Clerk."

From the Minutes, December Term, 1850.

Estate of J. H. Warfield, Deceased.  Order to Sell.

"In the matter of the application of the administrator for a sale of the conditional and unconditional certificate of headright of deceased, it is therefore ordered, adjudged and decreed by the court that Augustus C. Daws, administrator of this estate, proceed to sell, at public auction, to the highest bidder, on a credit of twelve months, on the first Tuesday of February, A. D. 1850, according to law, at the court house door of Harris County, after giving twenty days' notice, for the purpose of paying the costs, the conditional and unconditional headright certificate granted to decedent by the Commissioners of Harris County, together with all the privileges appertaining and belonging thereto, as described in the petition for sale filed this day.

"Estate of J. H. Warfield, Deceased.  Account Sales.  Filed February 5, 1851.

"I, Aug't C. Daws, administrator of the estate of J. H. Warfield, deceased, beg leave to report to the County Court, that in obedience to

an order of said court, entered at the December term, 1850, and according to said order and the law, I sold at public auction, to the highest bidder, on a credit of twelve months, at the court house door of Harris County, on Tuesday the 4th February, 1851, after twenty days' legal notice, the conditional and unconditional headright certificate granted by the board of land commissioners of Harris (Harrisburg) County to the deceased for 640 acres, the conditional certificate dated February 1, 1839, the unconditional certificate dated December 2, 1850, No. 984, as well as all land upon which the same has been or may be located; also all grants of land by virtue of said certificates made or to be made by the government of Texas to the said Warfield, deceased, or his heirs; and William R. Baker being the highest and best bidder at twenty-five dollars, the same was sold to him.

"Aug't C. Daws, Adm'r.

"Sworn and subscribed to before me, February 5, 1851.

"W. R. Baker, Clerk."

From the Minutes, February Term, 1851.

"Estate of J. H. Warfield, Deceased.   Order Confirming and Approving Sale.

"Augustus C. Daws, administrator of this estate, having filed on the 5th February, 1851, his account of a sale made and held by him on the 4th February, A. D. 1851, by virtue of an order of this court entered in the matter of this estate, at the December term, A. D. 1850, and it appearing to the court that after due examination of said return, and having enquired into the said sale, that the said sale was in all respects conducted according to law and the order of court, it is therefore ordered, adjudged and decreed by the court that said sale be approved and in all things confirmed. It is also ordered that Augustus C. Daws, administrator of this estate, execute and deliver to William R. Baker, the purchaser at said sale, a deed and transfer of all the right and title of this estate in and to the conditional and unconditional headright certificate granted to the said ——————— by the Board of Land Commissioners of Harris County (Harrisburg), as particularly described and set forth in said return of sale, which is made a part of this order for the purpose of description. Also all the land upon which the same may be or has been located, as well as all grants for said land made or to be made by virtue of said headrights by the government of Texas to the said deceased, or his heirs or legal representatives; and on motion of Wm. R. Baker, the purchaser, who appeared in court and elected to pay the amount of his bid in cash, it is ordered that the administrator receive it. It is also ordered that out of the money realized he pay the expenses of administration."

The following is a copy of the certificate:

"The State of Texas,          Class 3d.   No. 984.
     Harris County.                    640 acres.

"We, the undersigned Board of Land Commissioners for the County of Harris, do hereby certify that James H. Warfield, deceased, by administrator, appeared before us, and proved according to law that he emigrated to Texas previous to 1st January, 1842, with his family, and died therein. That he received a conditional certificate for 640 acres, dated February 1, 1839, from the Board of Land Commissioners of Harris County. This is therefore to declare that the said James H. Warfield, deceased, by administrator, is entitled to an unconditional headright of six hundred and forty (640) acres by virtue of his emigration, and the above described certificate heretofore issued.

"Given under my hand, this second day of December, A. D. 1850.

"Henry H. Allen, Chief Justice.

"H. E. DeChaume,

"John Viven,

"Ass. Commissioners.

"Attest:

"W. R. Baker, Clerk County Court."

*Opinion.* —From the foregoing conclusions of fact it appears that James H. Warfield, to whose heirs the land in controversy was granted, not only enlisted in the army of Texas, but also that he was an immigrant and died here in 1839. He was, then, a "citizen soldier" who died after the war, rather than a "volunteer from a foreign country" when he died. The certificate under which the land was located was granted to his administrator by virtue of his immigration. The ground, therefore, upon which the trial court held the administration of the Warfield estate to be void is not tenable, as was in effect decided in the case of Vogelsang v. Daugherty, 46 Texas, 466. Unless upon some other ground it was void, and therefore subject to collateral attack, the judgment must be reversed.

Expressions may be found in the opinion of our Supreme Court from which the conclusion might be drawn, that after the lapse of more than ten years from death to administration, as in this case, the presumption against the existence of debts would be sufficient to prevent the Probate Court from taking jurisdiction. The elaborate opinion of Justice Stayton, however, in the case of Martin v. Robinson, 67 Texas, 368, reviewing previous cases and construing the probate law of 1848, under which the administration in question was had, is in conflict with this view. In line with this opinion is the case of Lynne v. Sanford, 82 Texas, 58, and the two quite recent and elaborate opinions of Justice Denman in Crawford v. McDonald and Templeton v. Ferguson, 33 S. W. Rep., 325 and 329.

The petition for administration represented that Warfield had died in 1839, in Harris County, intestate, and that he was possessed of property and owed debts, and that letters were applied for at the request of a creditor. The order appointing an administrator upon such an application could not be declared void for want of jurisdiction, unless it

should otherwise appear from the record that the administration was unauthorized.

In Duncan v. Veal, 49 Texas, 603, Justice Moore, in considering an administration very similar to the one above set out, uses this language, which has since been quoted with approval: "It is too plain to require argument to demonstrate, that De Cordova administered upon the estate, not for the benefit of those in any way interested in it, but of those to be benefited by the costs to be hereby incurred, or who wished to profit by the sale of the certificate belonging to the decedent. The time and circumstances under which the pretended letters were granted render it obvious that, although nominally he obtained letters of administration on the estate of a deceased soldier of the Republic, he in fact administered upon that of his heirs; and, under the guise and pretense of administration, he attempted to sell and transfer to the principal beneficiary of the pretended administration property of the heirs with which neither he nor his confederates had any right to intermeddle."

This difference, however, will be noted between the two administrations; the one there considered was expressly prohibited, the estate being that of a foreign volunteer who died in the war, while, as already seen, the Warfield estate was that of an immigrant who died after the war.

In Paul v. Willis, 69 Texas, 261, this language, which is also applicable to the case at bar, was used by Judge Collard: "It is apparent that this administration was obtained to consume the estate and misapply it under the semblance of legal authority and by the aid of the Probate Court." But it was there further stated that "such fact of itself would not render the administration void as to third parties, that is, the attempt to misapply the estate would not, but the fact does furnish a reason why the law will, after such lapse of time, presume and declare such administration void."

In Harwood v. Wylie, 70 Texas, 538, the same judge said: "Courts should not hold an administration valid, even in a collateral attack, when it is shown to have been obtained for fraudulent purposes and by methods violative of express law." The court was there considering another administration of that notorious class taken out on the estate of a deceased soldier who perished at the Alamo, and hence expressly forbidden.

In both these cases, as in all others we have examined, the administration was declared null on collateral attack upon some other ground than that of manifest fraud in acquiring title to a decedent's estate through probate proceedings instituted for that purpose. It is well settled that a judgment is not subject to attack collaterally on the sole ground of fraud, the jurisdictional facts appearing or being presumable. The fact that such fraud may be inferred from the course and result of the proceeding, as in this case, without other proof, provided it does

not show a want of jurisdiction, should not, we think, constitute an exception to the rule.

The conclusiveness of judgments against collateral attack rests upon that policy of the law which seeks to put an end to litigation and give repose to titles. It is also a reasonable rule, because a remedy by direct proceeding is provided, usually in more than one form. Parties and privies of whose rights jurisdiction is acquired should therefore be held to pursue the remedy so provided in avoidance of a fraudulent judgment, irrespective of how that fraud may be made to appear. It is shown by the proceeding itself, without resort to evidence aliunde, so much the easier the task of avoiding it.

Even where the remedy at law proves inadequate, equity affords relief against the beneficiary of a judgment so fraudulently procured, no rights of purchasers for value and without notice intervening, by declaring a constructive trust and requiring a restoration to the true owner of the avails of the fraud so accomplished. Heidenheimer v. Loring, 6 Texas Civ. App., 560, and cases there cited in the opinion of Chief Justice Garrett, particularly the latter part of the opinion of Justice Stayton in Martin v. Robinson, supra.

Such affirmative equitable relief, however, must be sought by appropriate averments, and is not available under the ordinary petition, as in this case, of trespass to try title. Fisher v. Wood, 65 Texas, 199. In view of the great lapse of time—nearly a half century—since the probate sale in question, it is not at all probable that anything could now be accomplished by such an equitable suit, so long neglected.

Our conclusion is that the judgment should be reversed and here rendered in favor of appellants.

*Reversed and rendered.*

Delivered February 15, 1896.