# CHARLESTON.

SPRINGSTON *et al. v.* MORRIS *et al.*

Submitted June 17, 1899—Decided Nov. 18, 1899.

1. DECREE—*Recitals.*
    The recitals of a decree which is directly attacked for fraud and surprise in the procurement are not presumed to be absolute verities, but are subject to impeachment. (p. 53.)

2. DECREE—*Impeachment.*
    A decree of confirmation founded on a false report of sale made may be impeached by an interested party guiltless of culpable fraud or neglect. (p. 52.)

3. DIMINUTION OF RECORD.
    A litigant suggesting a diminution of the record, and obtaining from this Court a writ of certiorari, must have the alleged omitted portions of the record copied at his own expense, and the certiorari will be regarded as abandoned on his refusal to do so. (p. 55.)

Appeal from circuit court, Ritchie County.

Bill by America J., and J. B. Springston against P. W. Morris, A. J. Patton, and B. F. Ayres. Decree for defendants, and plaintiffs appeal.

*Reversed.*

H. C. Showalter, for appellants.

B. F. Ayers and P. W. Morris, for appellees.

Dent, President:

America J. Sprinsgton and J. B. Springston, her husband, filed their original bill in nature of a bill of review, in the circuit court of Ritchie County against the administrator of the estate of S. D. Webb, deceased, and others, in which it is alleged: That the said America J. Springston is an heir at law and distributee of the estate of said S. D. Webb deceased. That in said court about the 1st day of May, 1891, one J. R. Sigler filed a general creditors' bill against the three heirs of said Webb to ascertain the debts, and the property liable to the payment of the same, and enforce the sale thereof. The debts and property were ascertained by reference to a commission, and a decree was entered directing a sale of two tracts of land, one containing one hundred and eighty-three and a half acres, and the other five acres; and also an order was entered consolidating said cause with another suit instituted by H. E. McGregor, and to enforce a judgment lien against J. V. Webb, who was an heir at law of S. D. Webb, deceased. That the special commissioners, H. Peck and B. F. Ayres, advertised and sold the said one hundred and eighty-three and a half acres of land on the 1st day of the June term of court, 1893 (being the 20th day of June), to A. J. Patton and R. W. Morris at the price of five hundred and fifty-one dollars. The report of sale was returned by one of the special commissioners (Ayres), to which the plaintiffs took exceptions for inadequacy of price, and filed affidavits to sustain the same, showing the land to be worth at least one thousand two hundred dollars. Plaintiffs also made an upset bid of seven hundred dollars, and filed a bond to secure the same; and the plaintiffs understood the sale would be set aside, and the cause continued until the next term of court. That with this understanding the plaintiff

J. B. Springston, who was present, representing his wife's interest, returned to their home, which was about sixteen miles from the court house. That, after court adjourned, plaintiffs learned for the first time that on the 29th day of June, 1893, a decree had been entered under a new report of said commissioner, Ayres, in which he reported that the said land was sold on the 20th day of June, 1893, to the same purchasers at the price of seven hundred and ten dollars, confirming such sale, and awarding a writ of possession. The plaintiffs charge that this decree was obtained by collusion and fraud between the commissioner and said purchaser, and without the knowledge or consent of plaintiffs. They also object to a certain sum of twelve dollars and thirty-four cents allowed to J. R. Sigler, which was barred by the statute of limitations, and also to the consolidation of the two causes. As to the consolidation of the two causes, it is hardly necessary to say that this was improper, especially if the costs of both suits were paid out of the estate of S. V. Webb, deceased. Otherwise, it would not prejudice the rights of the plaintiffs. This, however, is not clear from the bill. Such questions, and others not here disposed of, if found necessary, can be brought to the attention of the court when this cause is remanded. The defendant B. F. Ayres, commissioner, and the purchasers, A. J. Patton and P. W. Morris, answered the bill, but wholly disregarded the allegations as to the two reports of sale, the upset bid, and bond filed; but they deny fraud and collusion, and rely on the decree of confirmation and recitals as a verity that cannot be impeached. The circuit court decided in their favor, and dismissed the bill at plaintiffs' costs. From this decree plaintiffs appeal, and assign as error the dismissal of their bill.

Defendants insist that the plaintiffs have no right to question the recitals of the decree confirming the sale. *State* v. *Vest*, 21 W. Va. 796. This is not the rule where a decree is directly impeached for fraud or surprise in its procurement. It may be an absolute verity as to what occured in court and was there recorded, but not as to the recitals therein contained as to what occurred other than in the presence of the court at the time of the entry of the decree, Black. Judgm. § 238. If such rule were to be held good in all cases, no decree could be impeached for

fraud or surprise; and yet such is ordinary equity juris-
diction.  Bart. Ch. Prac. (2d Ed.) p. 841.  The doctrine
of the absolute verity of the record must always yield to
that higher equitable doctrine that fraud vitiates all things.
"It is the just and proper pride of our mature system of
equity jurisprudence that fraud vitiates every transaction;
and however men may surround it with forms, solemn in-
struments, proceedings conforming to all the details re-
quired in the laws, or even by the formal judgment of
courts, a court of equity will disregard them all, if neces-
sary, that justice and equity may prevail." *Warner* v.
*Blakeman*, 43 N. Y. 507; Freem. Judgm. § 489.  The
proper way in which to attack such a decree, when the ob-
ject is merely to set aside the decree, and then permit the
original suit to continue to final hearing, is by an original
bill in the nature of a bill of review.  *Manion* v, *Fahy*, 11
W. Va. 482.  So the plaintiffs' bill must be regarded.
*Stuam* v. *Fleming*, 22 W. Va. 404.  The object of the orig-
inal part of the bill is to set up new matter, not in the rec-
ord, impeaching the recitals of the decree.  As in this case
the plaintiffs allege that the land was sold on the 20th day
of June, 1893, to Patton and Morris at the price of five hun-
dred and ten dollars; that Commissioner Ayres made the
report to this effect to the court; that on the 26th day of
June plaintiffs indorsed exceptions thereon for inadequacy,
and filed an upset bid, offering seven hundred dollars with
bond and security; that the bond was accepted in open
court, and the judge made the announcement from the
bench that the sale would be continued until the October
term, and then stated the upset bid; that after the plain-
tiffs, laboring under the belief that, the sale was continued,
had left court and returned to their homes, the commis-
sioner of sale made a new report to the court, that he had
sold the land to the same purchasers at the price of seven
hundred and ten dollars on the same day the other sale was
made, to wit, the 20th day of June, and had a decree en-
tered confirming such sale.  These allegations attack the
second report of the commissioner as being false and un-
true, and made and procured by the commissioner and al-
leged purchasers in fraud of plaintiffs' rights, and that the
decree formed thereon was invalid because thereof.
These allegations are fully sustained by the proofs and the

record other than the decree, and in fact they are not otherwise controverted by the defendants in their joint answer, but are virtually admitted. This is a practice that should be severely discountenanced by the circuit court, as without legal justification, and fraudulent as to parties, who have no notice thereof and do not consent thereto. A special commissioner is the representative of the court, and should at all times deal honestly and openly with its litigants and the court itself, and not deceive either the one or the other by questionable practices. The commissioner, in his brief, attempts to justify his conduct with this language: "On the first day of the term the land was sold to A. J. Patton and P. W. Morris, as appears from what is called the 'Report', found in * * * the record. There were exceptions taken to it, and affiant and the exceptor were trying to get the sale set aside and postponed until the first day of the next term, when he offered to bid the sum specified in his affidavit; but the court ruled that the purchasers had a right to increase their bid made on the first day of the term to $710, if they saw fit to do so. The man who filed the upset bid was absent, and no one offered any more for him, and all further objections to the sale were tacitly waived, and it was reported at $710, as of the 20th June, 1893; and there were no exceptions taken whatever to the confirmation by the court, and the court's record recites the truth when it says that "it came on to be heard without any exception.' " There is neither allegation nor proof that the exceptor was trying to get the sale set aside and postponed until the first day of the next term of the court, but the allegation and proof is that the sale had already been set aside and postponed until the next term, except in so far as the entry of a formal order was concerned. Nor is there allegation or proof that the court ruled that the purchasers might increase their bid made on the first day of the term to seven hundred and ten dollars, and if such was done in open court it would not have been necessary to make out a new report, dating it as of the first one; and the court would not, certainly, permit the biddings to be opened without notice to the parties most interested, or their attorneys. Such would be an erroneous practice. If done, the record should show it. The dealings of a court with a subject-matter before it

should be open and public, without concealment or deception, taking advantage of the absence of interested or innocent parties, whose absence is caused by prior oral and apparently final rulings of the court touching the same matter; and this always will be presumed in favor of the court unless the contrary is shown.    Unless plainly apparent, the court cannot be held responsible for wrong conduct on the part of its officers.    And it cannot be presumed that if the court knew the facts it would permit a commissioner of sale to falsify his report, as was done in this case, to the injury of an absent litigant.    The purchasers may be entirely free from blame in the matter; but, when it was brought to their attention by plaintiffs' bill, they should have been prompt, eager, and willing to decline to be benefited by the unconscionable advantage they had obtained by reason of the confiding and innocent absence of the plaintiffs, instead of tenaciously clinging thereto behind supposed legal barriers.    This would have entirely freed them from the charge of collusion.

The motion to dismiss for failure to print the omitted portions of the record will be overruled, from the fact that such portions of the record are not before this Court for its inspection.    Affidavits cannot supply the place of the records, and the court will not act upon them, but only from self-inspection on return of the certiorari.    It appears that the clerk of the circuit court would not copy them, for the reasons that neither party would pay him therefor.    It is a rule of this Court, that the party applying for the writ of certiorari must pay for the copying of the alleged omitted portions of the record, and if he refused to do so, that this will amount to a waiver of the writ, and be so regarded.

For the foregoing reasons the decree of the circuit court dismissing the plaintiffs' bill is reversed and annulled at the costs of the appellees Ayers, Morris, and Patton; and the order entered by it on the 29th day of June, 1893, in the case of Sigler and others against Musgrave and others, confirming the alleged sale of the one hundred and eighty-three and one-half acres of land, is also set aside, reversed, and annulled, and this cause is remanded to the circuit court to be further proceeded in according to the rules and principles governing courts of equity.

*Reversed.*