CHAPMAN, Commissioner of Insurance and Banking, et al. v. GUARANTY STATE BANK et al. (No. 562–4149.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.)

1. Banks and banking ☞63½—Sale of assets of insolvent bank held judicial sale, and not to be rescinded except by direct proceeding.

In view of depositors' guaranty law and Const. art. 16, § 16, sale of assets of insolvent state bank, in possession of banking commissioner, for liquidation, has effect of judicial sale, and cannot be rescinded or annulled except by direct proceeding or by motion, in particular insolvency proceeding.

2. Banks and banking ☞63½—Banking commissioner is administrative officer and statutory receiver.

Under Bank Deposit Guaranty Law, banking commissioner is administrative officer of state, and, when bank under his control becomes insolvent, and he takes possession, he is statutory receiver to some extent under a direction of court administering estate.

3. Banks and banking ☞15—Purpose of depositors' guaranty law stated.

Paramount purpose of Bank Deposit Guaranty Law is to secure depositors and guarantee prompt payment of noninterest-bearing and unsecured deposits.

4. Banks and banking ☞63½—Banking commissioner becomes receiver of insolvent bank, subject to orders of district court or judge.

Immediately on taking over insolvent bank by banking commissioner, administration of estate of bank is in effect opened in district court of county where bank is located, and commissioner becomes receiver by operation of law, and as to sale of assets thereof must act under orders of court or judge thereof.

5. Banks and banking ☞63½—Order of court or judge is requisite to sale of property of insolvent bank.

Order of court or judge is absolutely requisite to valid sale of property of insolvent bank by commissioner of banking.

6. Judicial sales ☞1—Elements of "judicial sale" stated.

A judicial sale is one made under order of judge having competent authority by officer legally authorized for that purpose and on terms and rules provided by order.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Judicial Sales.]

7. Banks and banking ☞4—Constitutional law ☞46(1)—Bank depositors' guaranty law liberally construed; law treated as valid until decision on validity necessary and proper.

Bank depositors' guaranty law must be liberally construed to accomplish paramount purpose, and treated as constitutional until decision thereon becomes necessary and proper.

8. Banks and banking ☞63½—Judicial sale of property of insolvent bank cannot be collaterally attacked.

Judicial sale of assets of insolvent bank by commissioner of banking cannot be collaterally attacked.

9. Judicial Sales ☞31(3)—Order of sale and decree of confirmation subject to attack only by methods available to set aside other decrees.

Order of sale and decree of confirmation made by court of competent jurisdiction, having jurisdiction of parties and subject-matter, have force and effect of final adjudication, and are subject to attack only by methods available to set aside other decrees.

10. Judicial sales ☞47—"Void" judicial sales may be attacked collaterally; "voidable" sales only in direct proceeding.

Void judicial sales may be attacked collaterally, but, if only voidable, proceeding must be direct; "void" meaning nullity or something that cannot be ratified, while "voidable" means that which may be avoided at suit of interested party but which is subject to ratification.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Void; Voidable.]

11. Judicial sales ☞34, 45—Proceeding for avoiding judicial sale after confirmation stated.

After confirmation, if action is still pending, court may vacate sale and order confirming it

in direct proceeding in cause in which sale and confirmation were had, on grounds sufficient to set aside final decree in equity begun in time and manner required in such cases; if case be ended, procedure is by independent action.

**12. Judicial sales ☞61—When deed evidencing judicial sale set aside for fraud without attack on judgment stated.**

Deeds evidencing execution of judicial sales may usually be set aside for fraud without attack on judgment, where fraud arises in connection with and has relation to act of making sale and carrying out of court's orders.

**13. Banks and banking ☞63½—Action to rescind held not direct attack on order for and confirmation of sale of insolvent bank's property.**

Where pleadings in action to rescind contract with banking commissioner treated contract to purchase assets of insolvent bank as made solely with commissioner, and contained no reference to orders under which contract was made, action *held* not to be treated as direct attack on orders of judge, or as original suit to set aside and vacate proceedings had in original cause.

**14. Banks and banking ☞63½—Possession of banking commission of assets of insolvent bank in possession of court.**

Under bank depositors' guaranty law, property of insolvent bank of which banking commissioner has charge is in custodia legis, and his possession is that of the court.

**15. Banks and banking ☞15—No liability against guaranty fund for acts of banking commissioner.**

That banking commissioner was guilty of fraud in sale of assets of insolvent bank creates no liability which, under Rev. St. art. 449, could be paid out of guaranty fund, even though such fund is incidentally benefited.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Guaranty State Bank and others against J. L. Chapman, Commissioner of Insurance and Banking, and others. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (259 S. W. 972), and defendants bring error. Reversed and remanded.

W. A. Keeling, Atty. Gen., and John C. Wall and John W. Goodwin, Asst. Attys. Gen. (Walace Hawkins and Chas. L. Black, both of Austin, of counsel), for plaintiffs in error.

B. Gayle Prestridge, of Cleburne, and Bailey, Nickels & Bailey, Jed C. Adams, Grover Adams, W. B. Harrell, Chas. A. Rasbury, and R. L. Stennis, all of Dallas, for defendants in error.

GERMAN, P. J. About the 1st of April, 1922, the Traders' State Bank of Cleburne, Tex., became insolvent, and was taken in charge by Ed Hall, the commissioner of insurance and banking, who began the liquidation of such bank. In the process of liquidation the commissioner of insurance and banking negotiated a sale of a large part of the assets of the Traders' State Bank to the Guaranty State Bank of Cleburne, which was organized and incorporated for the purpose of taking over the assets of the Traders' State Bank and conducting the liquidation. The agreement entered into was substantially as follows: The commissioner of insurance and banking deposited in the Traders' State Bank out of the state guaranty fund the sum of $200,000, which was to be treated as a part of the assets of that bank. The stockholders of the Guaranty State Bank paid in the sum of $100,000 as its capital. After deducting about $313,000 of notes and paper from the assets of the Traders' State Bank, all of its other assets, including banking house, fixtures, and furniture, was to be transferred to the Guaranty State Bank. The assets consisted principally of several hundred thousand dollars in notes and paper, which were taken at their face value, and the consideration for the transfer on the part of the Guaranty State Bank was its agreement to assume and pay all debts and liabilities of the Traders' State Bank, including all claims of depositors. This agreement was reduced to writing, and on the 15th day of April, 1922, the commissioner obtained from the judge of the district court of Johnson county an order directing the sale, which recites that the application for such order had been duly considered and evidence heard thereon. The substance of the order is as follows:

"It is therefore considered by the judge, and so ordered, that the said Ed Hall, as commissioner of insurance and banking of the state of Texas, be and he is directed to conclude the contract described in said petition with the Guaranty State Bank and to sell to said Guaranty State Bank of Cleburne all of the assets of the Traders' State Bank in said petition described, and that all of the terms of the said contract as alleged be carried out in all respects, the said Guaranty State Bank assuming the liabilities and obligations in said contract specified."

On the same date the commissioner reported the sale as having been made in all respects in compliance with the contract, and the judge thereupon approved and confirmed the sale. After reciting due consideration of the report, and an examination of the statement of assets and liabilities of the bank, the order concludes:

"It is therefore ordered and adjudged by the court that the said report of sale be and the same is in all things approved and confirmed, and the said Ed Hall, as commissioner as aforesaid, is directed to execute and deliver the proper instrument of conveyance in accordance

with his said contract and agreement entered by him as shown by said report."

These orders are all styled:

"Ex parte Traders' State Bank of Cleburne, insolvent. In the district court of Johnson county, Tex. In vacation."

In pursuance to said orders the commissioner executed a conveyance to the Guaranty State Bank, which was also accepted and executed by the president of the bank under proper resolution adopted by the board of directors.

The Guaranty State Bank immediately took charge of all the assets of the Traders' State Bank transferred to it, and at once opened its doors for business. In September thereafter the commissioner of insurance and banking, after an investigation of the affairs of said Guaranty State Bank, demanded that the stockholders put into said bank the sum of $25,000 to take the place of paper which had been found to be worthless, and this was done. The bank continued to do business until April 4, 1923, when the commissioner of insurance and banking took charge of same on the ground that it was insolvent.

This suit was filed April 21, 1923, by the Guaranty State Bank and its directors against the present banking commissioner, J. L. Chapman, and the state banking board. The purpose of the suit was to obtain a rescission of the contract and agreement above referred to, to have the commissioner and the state banking board to take back all the assets received by the Guaranty State Bank in the transfer, and, if cash received had been loaned, to take in lieu thereof notes received by the Guaranty State Bank for said cash, and that plaintiffs recover from defendants the sum of $125,000 paid into the bank by the stockholders, or that sum in notes taken by the bank during the time it was engaged in business. The basis of this demand was that the commissioner and his assistants, in making the agreement and contract with the Guaranty State Bank, had practiced fraud upon it, in that they had represented to the bank that all worthless and bad paper had been taken from the holdings of the Traders' State Bank, and that all notes, warrants, and other paper being transferred to it were good and solvent and worth their face value, and such assets were worth as much or more than all the liabilities being assumed by the bank; that in making the contract, paying in the $100,000 to the capital of the bank, and in taking over and accepting the assets of the Traders' State Bank, it relied upon the representations of the commissioner. It was further claimed that the representations made by the commissioner were not true, and that in the process of liquidation it was found that several hundred thousand dollars worth of said paper was worthless; that by reason of the assets received by it being worthless, and the

demands made upon it to pay the liabilities of the Traders' State Bank, its condition of insolvency was brought about; that on account of the fraud and deceit of the commissioner it was entitled to a rescission of the sale and the relief asked for, as shown above.

The trial court rendered judgment rescinding the contract of sale of April 15, 1915, and further decreed that the plaintiffs, jointly and severally, recover of the defendants the sum of $125,000, with 6 per cent. interest from date of judgment. It was provided that defendants might satisfy the judgment by delivering to plaintiffs notes of the face value of the judgment, which had been received by the Guaranty State Bank on loans made by it; or notes acquired by it in the transfer which had been classified as good. The plaintiffs were ordered to place defendants in statu quo by returning all assets received by the Guaranty State Bank in the transfer not theretofore returned, and all cash, notes, and bills representing same or any renewals thereof, less all sums paid by the Guaranty State Bank on the liabilities of the Traders' State Bank, and less all lawful debts incurred by it and growing out of said contract. This judgment was affirmed by the Court of Civil Appeals. 259 S. W. 972.

[1] There are numerous assignments of error. Many of them relate to one general proposition, and a discussion of it will make it unnecessary to discuss other questions in detail. The controlling proposition may thus be stated:

A sale of all the assets and property of an insolvent state bank, the property of which is in the possession of the banking commissioner of Texas, in the process of liquidation, has the effect of a judicial sale, and cannot be rescinded or anulled except by direct proceeding or motion filed in the particular insolvency proceeding, having for its purpose the review and setting aside of the orders of the court, or judge thereof, directing and confirming the sale made by the commissioner.

After a most painstaking and careful study of the question, we have reached the conclusion that the contract of sale made April 15, 1922, by which the commissioner of insurance and banking transferred to the Guaranty State Bank the assets of the Traders' State Bank, which was then in liquidation, must be regarded as having the force and effect of a judicial sale. This being true, the present proceeding, being in effect a collateral attack upon that sale, even though predicated upon allegations of fraud in the inception of the contract, was not properly brought. A proper discussion of this matter requires a review of the powers and authority of the banking commissioner.

[2] By the provisions of what is known as the Bank Deposit Guaranty Law, being chapter 5 of title 14 of the Revised Statutes, and

amendments thereto, the banking commissioner of Texas (formerly the commissioner of insurance and banking) is given a wide range of powers in connection with the organization, supervision, and liquidation of state banks. We think he clearly occupies under the law two distinct positions. As an administrative officer of the state he possesses numerous statutory powers pertaining to the administration, regulation, and closing of banking institutions. When, however, a bank under his control has become insolvent, and he has taken possession of its property and assets for liquidation, he occupies a somewhat different status. He then becomes what has been termed a statutory receiver, to some extent under the authority and direction of the court administering the insolvent estate. Even as such receiver he possesses certain statutory powers not usually possessed by a receiver appointed by the court. As to the extent of such powers it is not necessary to here determine. In many of the details of the administration of the insolvent estate the commissioner must act under orders of the court or judge exactly as a receiver appointed by order of the court.

[3] The paramount purpose of the Bank Deposit Guaranty Law is to secure depositors and guarantee the prompt payment of noninterest-bearing and unsecured deposits. As necessary to the accomplishment of this purpose there are two outstanding features of the law: (1) Means for a rigid and thorough supervision of the organization and administration of state banks. (2) A method for the efficient, effective, prompt, and economical liquidation of the assets of insolvent banks, having in view the conservation of such assets and the protection of depositors and creditors. In carrying out the first object the commissioner acts almost exclusively in his administrative capacity as an officer of the state. For the second object he has been constituted a receiver, and has been given numerous statutory powers usually conferred by the court on chancery receivers. To avoid the necessity of different receivers in each particular case of liquidation of an insolvent bank, and the great expense of commissions and attorney fees incident thereto, it is manifest that it was the legislative intent to constitute the banking commissioner receiver for each and every insolvent bank, under direction and control, to a limited extent, of the district court of the county where the bank was located, which is by the law given jurisdiction of the matter of liquidation and control of the property.

[4] In the case of Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, it was held by the Supreme Court that the property of an insolvent bank, being liquidated by the banking commissioner, is in custodia legis, and that the district court of the county where the bank was located has exclusive jurisdiction of the subject-matter of the liquidation and the custody of the property involved. We think the necessary conclusion from this decision and other cases is that, immediately upon the taking over of an insolvent bank by the banking commissioner, an administration of the estate of such bank for certain purposes is, in effect, opened in the district court of the county where the bank is located, and the commissioner becomes the receiver of such bank by operation of law, exactly the same as if appointed receiver by order of the court, and, in so far as the sale of the assets and property of the bank is concerned, the commissioner must act under order of the court or judge, and is in this respect the arm of the court as though acting under appointment by the court. In addition to cases cited in Kidder v. Hall we refer to the following: Bennett v. Green, 156 Ga. 572, 119 S. E. 620; Sessions v. Bennett, 155 Ga. 193, 116 S. E. 300; Bullock v. Oliver, 155 Ga. 151, 116 S. E. 1293, 29 A. L. R. 1484.

Article 458 of the statute provides:

"Upon the order of the district court, if in session, or the judge thereof, if in vacation, of the county in which such state bank was located and transacting business, the commissioner may sell or compound all bad or doubtful debts, and, on like order, may sell the real or personal property of such state bank, on such terms as the court shall direct."

[5, 6] That an order of the court or judge is absolutely requisite to a valid sale of the property of the bank cannot be questioned. See Tourtelot v. Booker (Tex. Civ. App.) 160 S. W. 293. The commissioner may negotiate the terms of the sale, but it is the order of the court or judge which gives effectiveness to the contract. That the sale made here has all the characteristics of a judicial sale, rather than an administrative sale, where the terms and conditions are fixed by statute, is apparent from a consideration of the orders and the article of the statute quoted above. It was made under order of a judge having competent authority, by the officer legally authorized for that purpose, and was made upon the terms and rules provided by the order. These are the essential elements of a judicial sale. 16 R. C. L. 6; Freeman on Void Judicial Sales, 1, 2; Schaberg v. McDonald, 60 Neb. 501, 83 N. W. 737; Ellis v. Little, 27 Kan. 707; In re Superintendent of Banks, 207 N. Y. 11, 100 N. E. 428; Southern Cotton Mills Co. v. Ragan, 138 Ga. 504, 75 S. E. 313; Campbell v. Parker, 59 N. J. Eq. 342, 45 A. 116; In re Denison, 114 N. Y. 621, 21 N. E. 97.

In argument it was suggested that this could not be considered a judicial sale, because the orders referred to were made by the district judge in vacation. Whether it be termed a strictly judicial sale or not, as indicated above, we think it should be given the effect of such sale, and that the Legislature fully intended that it should be given

this effect. Section 16 of article 16 of our state Constitution provides:

"The Legislature shall, by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which shall adequately protect and secure the depositors and creditors thereof."

[7] As pointed out above, the dominant purpose of the laws under review was to secure the depositors and protect the creditors of state banks. Perhaps no one thing is more conducive to that end than the prompt liquidation of the assets of an insolvent bank. The Legislature must have recognized that the beneficent purpose of the law might be defeated in many instances if it were necessary to obtain an order of a court in session to authorize the compounding of debts or the sale of personal and real property. The Legislature must have also known that the assets of an insolvent bank could not be sold or disposed of to advantage and to the best interest of depositors and creditors if the sale were not free from attack on account of insufficient orders of sale or confirmation. It will therefore be presumed that the Legislature concluded that it had ample authority under the constitutional provision to invest the judge of the district court with power to make orders having the same legal effect as orders of the court. It is, however, not necessary for us to decide the extent of the legislative authority, as the sale in this instance has not been attacked because of insufficient orders, nor has its validity been questioned except on account of the alleged fraud. The contract was consummated, and the purchaser took possession of all the property with full knowledge of every step taken in the execution of the agreement. The pleadings do not even suggest that the transaction was not legal or regular as to form and the manner of its execution. The sale was in accordance with the provisions of the law, and we think it proper to give to it all the force and effect which under any and every reasonable presumption the law will warrant. The law must be liberally construed with a view of accomplishing its paramount purpose, and will be treated as in all respects constitutional until a decision as to its constitutionality becomes necessary and proper.

[8, 9] We therefore conclude that this sale cannot be collaterally attacked. As noted above, the contract of sale was made under the direct supervision of the district judge. It was in effect made with the court. It cannot be rescinded without destroying the orders of the judge. We think it may be stated, as a well-settled proposition, that an order of sale and a decree of confirmation made by a court of competent jurisdiction, and having jurisdiction of the parties and the subject-matter, have the same force and

effect as any other final adjudication of a court, and are subject to attack only by such methods as may be available to set aside other decrees. 16 R. C. L. pp. 33, 82–86; Freeman on Void Judicial Sales, pp. 79–82, 142–148; Murchison v. White, 54 Tex. 78; White v. Bedell (Tex. Civ. App.) 173 S. W. 624; Giddings v. Steele, 28 Tex. 733, 756, 91 Am. Dec. 336; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Shirley v. Warfield, 12 Tex. Civ. App. 449, 34 S. W. 390; Nolad v. Barrett, 122 Mo. 181, 26 S. W. 692, 43 Am. St. Rep. 572.

In 16 R. C. L. p. 85, it is stated:

"The final order of confirmation, having the effect of a final conclusive judgment, cures all irregularities, misconduct, and unfairness in the making of the sale, departures from the provisions of the decree of sale, and errors in the decree and proceedings under it; and, if the court had jurisdiction and the officer authority to sell, it makes the sale valid as against collateral attack, even though irregular and voidable before, and though grounds sufficient to have prevented the confirmation existed."

In the case of Murchison v. White, supra, suit was brought in the district court of Anderson county to set aside and annul proceedings of the county court of that county under which an administrator made sale of certain lands; one of the grounds of relief being fraud. After discussing the matter of jurisdiction, the court said:

"As a general rule, in all other cases where such judgment is sought to be collaterally impeached by matters dehors the record, and which must be sustained by proof aliunde, as in case of alleged fraud of a party, this must be done by some proper affirmative proceeding, and which also, upon grounds of public policy, must be instituted within the time enjoined by law."

[10, 11] No one questions the right of a purchaser to set aside a judicial sale for fraud in a proper and timely proceeding. Of course, if the sale be void, it may be attacked collaterally, but if it be only voidable, it can only be done in a direct proceeding. As applied to judicial sales, the word void means a nullity, or something that cannot be ratified, while the word voidable means that which may be avoided at the suit of the interested party, but which is subject to ratification. So, in the present instance, the contract at the most was only voidable. It seems to be the established procedure that until sale by a commissioner under direction of the court has been confirmed it is subject to control by the court, and one seeking to avoid same for fraud should file objections to the report, or a motion to set aside the sale. After confirmation, if the action be still pending, the rule is that the court may vacate the sale and order confirming it in a direct proceeding brought for that purpose in the cause in which the sale and confirmation were

had, based upon grounds sufficient to justify the setting aside of a final decree in equity, and begun in the time and manner required in such cases. 16 R. C. L. 99. If the cause be ended, then the procedure is by independent action, in the nature of a direct suit for that particular purpose. See Springston v. Morris, 47 W. Va. 50, 34 S. E. 766; Smith v. Fort, 105 N. C. 453, 10 S. E. 914; Palmerton v. Hope, 131 Ind. 23, 30 N. E. 874; Sayre v. Elyton Land Co., 73 Ala. 85; Henderson v. Herrod, 23 Miss. 434; Churchill v. Meade, 92 Or. 626, 182 P. 373; People v. Banking Co., 189 N. Y. 233, 82 N. E. 184.

[12] We recognize the settled rule that in some instances deeds and other instruments evidencing the execution of a judicial sale may be set aside or annulled for fraud without an attack upon the judgment and decrees of the court. This is usually true where the fraud arises in connection with and has relation to the act of making the sale and in carrying out the orders of the court. We do not think any case can be found where the contract, as evidenced by the orders of the court, has been annulled in a collateral attack. Upon this principle the cases relied upon by defendants in error may be distinguished from this case. For instance, in the case of Cocks v. Izard, 74 U. S. 559, 19 L. Ed. 275, it is expressly stated that the grounds for setting aside the sale were "unfair practices, which operated to prevent persons, who were in attendance at the sale and desirous of purchasing, from bidding." In the case of McCampbell v. Durst, 73 Tex. 410, 11 S. W. 380, it was held that the proceeding was not a collateral attack upon the probate proceedings under which a deed was executed, but a direct effort to vacate the deed, because it did not, by reason of fraud, represent the real contract which the probate court had made and confirmed. The orders of the court, representing the terms of the real contract, were left unimpaired. In the present case the effort is to vacate the entire transaction, leaving the orders of the judge upon the minutes of the court meaningless and of no force and effect.

[13] We do not think that by the most liberal interpretation can the present proceeding be regarded as a direct attack upon the orders of the judge, or as an effort by original suit, to set aside and vacate the proceedings had in the original cause of Ex parte Traders' State Bank. The pleadings treat the contract as one made solely with the commissioner of insurance and banking, as if made without the necessity of any orders of the court or judge. The orders under which the contract was consummated are not referred to, and it is apparent that the pleading avoided any reference to the proceedings in the district court in order to relieve the transaction from any appearance of being a judicial sale. There is no suggestion that the insolvency proceeding concerning the Traders' State Bank has been closed, or is pending.

[14] Defendants in error rely with much confidence upon the case of Ex parte Chetwood, 165 U. S. 443, 17 S. Ct. 385, 41 L. Ed. 782, as authority for the contention that the assets of the Traders' State Bank were not in the custody of the district court of Johnson county at the time of the sale, and that the commissioner was not acting as an officer of the court. That case, in effect, holds that the filing of an application by a receiver of a national bank in a court for an order to sell property of the bank does not make him an officer of the court. We do not think it necessary to hold that the banking commissioner is, strictly speaking, an officer of the court in order to give to the sale in question the effect of a judicial sale. Our statute does not invest the commissioner with absolute title to the assets of the insolvent bank. This would be the necessary conclusion if the contention of defendants in error that his sale alone passed title to the property was correct. Although he is appointed receiver by operation of law, and the statute has conferred on him certain special powers and rights, it has not conferred the power to sell the property of the bank without order of the court or judge. It is the order of the court or judge which makes effective his power to sell. So far as the right of the commissioner to sell the property and assets of the bank is concerned, we think it is the clear intention of the law that the property of which he has charge is in custodia legis, and his possession, in that particular, is the possession of the court. Kidder v. Hall, supra; U. S. Fidelity &. Guaranty Co. v. Central Trust Co. (W. Va.) 121 S. E. 430; 34 Cyc. 184, 185.

It is also important to notice that the national banking law requires "an order of a court of competent jurisdiction" to authorize the receiver to make a sale of assets of the bank. See Tourtelot v. Booker, supra. We think it very significant that our statute includes the words "or judge thereof." Our conclusion is that the general demurrer should have been sustained.

Having reached the conclusion that this action was not properly brought, it is not necessary to discuss certain questions, which would be pertinent if the suit had been brought in the nature of a direct proceeding to set aside and vacate the action of the district judge. Some of these questions raise in our mind a very serious doubt of the right of defendants in error to recover at all in the light of the record as it now stands. This is particularly true, in view of the evidence that the organizers of the Guaranty State Bank were in equally as good position as the commissioner, if not better, to know and to learn the true value of the

notes and paper assigned to them, and there is no sufficient allegation of fact as to why the purchasers had a right to rely upon the commissioner, or were fraudulently induced to forbear making examination and inquiry for themselves.

[15] There are some other important questions involved which it is necessary for us to briefly notice. As pointed out above, the banking commissioner acts in a twofold capacity. In one he acts as an administrative officer of the state in his general capacity as banking commissioner. In the other he acts as liquidator and receiver of some particular insolvent state bank. We are unable to conceive how there could be an official liability against the commissioner while acting in his general capacity as an agent of the state, because there has been no fund created by law out of which such liability might be satisfied. Certainly it cannot be paid out of the bank guaranty fund. Article 449, Revised Statutes. Liability against the banking commissioner, it occurs to us, can arise only in connection with his administration of the estate of some insolvent bank. As indicated herein, in the particular transaction involved here he was acting in his capacity as receiver, under the direction of the district court of Johnson county, and his act had direct relation to the estate of the Traders' State Bank, and was for the benefit of it and its creditors. If a benefit accrued to the commissioner by reason of the transaction, then it accrued to him in his capacity as receiver of the Traders' State Bank. The fact that the depositors' guaranty fund may have received indirectly some benefit from this sale does not, we think, give cause of action against the banking commissioner and the state banking board as custodians of that fund; especially in the absence of allegations and proof showing with reasonable certainty that the money of plaintiffs was received by the guaranty fund, and no adequate consideration given therefor, and also showing equitable reasons why that fund should refund the money received. We think the pleadings and the proof as shown by the present record are wholly insufficient in this particular. It occurs to us, then, that, if the defendants in error are in position to prosecute an action at all, it is in connection with the administration of the estate of the Traders' State Bank, conducted in the manner which the statute indicates, and under appropriate pleadings. In so far as the commissioner acted in the matter as agent of the court, he would be subject to all its equitable powers.

However, there is serious doubt as to the authority of defendants in error to assert the alleged cause of action at all. The Guaranty State Bank was, on the 4th of April, 1923, declared to be insolvent by the bank commissioner, and he then took over all the assets and property of the bank, and is now proceeding with its liquidation in accordance with the law. The action of the commissioner has been sustained by the court, and this adjudication is final. This unquestionably had the effect to give to the commissioner the sole and exclusive right to administer the estate, under supervision of the court and judge, and to enforce the demands in favor of the bank. If the Guaranty State Bank has a cause of action, whether against the depositors' guaranty fund, the estate of the Traders' State Bank, or the banking commissioner in his capacity as liquidator or receiver of that bank, it occurs to us that the law has committed to the commissioner in his capacity as liquidator of the Guaranty State Bank the exclusive right to prosecute that cause of action, in the absence of allegations and proof of fraud or dereliction in duty, or other equitable grounds which would justify the court in appointing another receiver for that purpose. State ex rel. Short v. Norman, 86 Okl. 36, 206 P. 522, and cases cited; Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 107 N. E. 644; Berrien County Bank v. Alexander, 29 Ga. App. 658, 115 S. E. 648.

There is also another important matter which it would seem was overlooked by the trial court in entering the judgment in this cause. By article 487 it is provided that the state shall have, for the benefit of the depositors' guaranty fund, a first lien upon all assets and all liabilities owing or accruing to any bank, the property of which has been taken possession of by the commissioner for the purpose of liquidation. It is unquestionably the duty of the court and of the commissioner to see that this right of the state is protected. If it be conceded that there exists a cause of action in favor of the Guaranty State Bank against any one, and it be reduced to judgment, immediately upon it being paid, either in money, notes, or property, these must remain in the exclusive possession of the commissioner to be utilized by him, if necessary, to pay the depositors and creditors of the Guaranty State Bank.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed and the cause be remanded.

BISHOP, J., not sitting.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

CURETON, C. J., not sitting.