## Kohn v. Dahlem.

Oct. 31, 1939.

Joseph J. Kaplan for appellant.

Anna H. Settle and Lawrence Leopold for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This litigation involves the question as to whether a sale of real property made by the banking commissioner or his agent in the liquidation of an insolvent bank becomes a judicial sale when it is reported to and confirmed by the court. The action was brought originally by the appellant, the plaintiff below, as an ordinary action, but was later transferred to equity over his objection. A demurrer was sustained to the appellant's petition as amended, and upon his failing to plead further his petition was dismissed; hence this appeal.

In his opinion overruling the motion to reconsider his ruling on demurrer the chancellor set forth briefly the facts and circumstances involved. The first two paragraphs of his opinion are as follows:

"At the final liquidation sale of the Bankers Trust Company, Lee Kohn bought the residue of assets. Among the assets purchased was a claim of the liquidator against a man by the name of Joseph C. Dahlem, Jr. This claim of the liquidator against Dahlem arose out of the following state of facts: The liquidator after advertisement, sold a piece of real property belonging to his trust situated at No. 321 South 43rd Street in Louisville. Dahlem bid

the property in for approximately $2,500.00. Under Kentucky Statutes 165a-17, the liquidator reported the sale to the court. On April 17, 1937, the court confirmed the sale. Ex parte Smith, Banking Commissioner, 160 Ky. 83, 169 S. W. 582.

"Dahlem declined to go through with the trade. Without reporting Dahlem's failure to the court, without having the confirmation of the sale to Dahlem set aside, and without taking any court proceeding against Dahlem, the liquidator proceeded to readvertise and resell the property. At the second sale the property brought approximately $1,-500.00; i. e., about $1,000.00 less than it brought at the first sale. This second sale was reported to the court and confirmed in the early summer of 1937. The purchaser at the second sale was in no way connected with Dahlem. The liquidator claimed Dahlem was liable for the $1,000.00 deficit; i. e., difference between Dahlem's bid and the sum realized at the second sale."

After stating that the procedure in Kentucky to coerce a recusant bidder at judicial sales had been worked out largely from Daniel's Chancery Practice, and quoting from 6 American Edition, pages 1280, 1282, the chancellor concludes his opinion as follows:

"Locally (Jefferson Circuit Court) what happens is this: Resale is not had until the recusant bidder is hailed before the court by rule. When the bidder is before the court the plaintiff (or defendant) then elects whether a second sale shall be had at the risk of the first purchaser or whether the first purchaser shall stand discharged. Although the defendant has rights in the matter, it is usually the plaintiff who acts. The difference in selling at the risk of the first purchaser and in discharging the first purchaser is this: If sold at the risk of the first purchaser, that purchaser must make good any deficit, but he is entitled to any overplus. If discharged, the first bidder has no interest in either deficit or overplus.

"But the rights and obligations of the first bidder must be fixed by the order of resale, otherwise under the local practice he stands discharged. The plaintiff cannot gamble at the expense of the first

purchaser. Plaintiff must make his election to be incorporated into the order of resale.

"Now if the first sale in the case at bar were a judicial sale, the liquidator would have lost all rights against Dahlem by failing to fix Dahlem's obligation by the order of resale. In other words unless the order of resale holds the first purchaser, he stands discharged. Such is the local practice, as I understand it.

"Conclusions.—I am of the opinion—although without any authority on all fours—that the liquidator's sale as confirmed by the court becomes sufficiently analogous to a judicial sale to require the liquidator to have the court order set aside before he can resell at the risk of the first purchaser. I think the liquidator who takes the law into his own hands and in defiance of the court's confirmation goes ahead and resells on his own authority thereby loses any right to invoke the aid of the court against the first purchaser. Personally, I see no sense in the court's confirmation, if the liquidator can disregard such confirmation without even so much as a 'by your leave.' Thus, in my opinion, the liquidator, by acting in disregard of the court's confirmation, lost any right that he may have had against First Purchaser Dahlem. As Kohn claims under the liquidator, Kohn's rights cannot exceed those of the liquidator. The stream cannot rise higher than its source. Ruling.—Motion to set aside ruling on demurrer is denied; the demurrer stands sustained to the petition."

The appellant insists that error was committed in holding that the sale became a judicial sale upon its confirmation and that it was necessary to have the court set aside the order of confirmation before the property could be resold at the risk of the first purchaser and also in the transfer of the cause to equity.

The part of Section 165a-17 of the Statutes which requires that the liquidating agent report his acts to the circuit court is as follows:

"Whenever the banking and securities commissioner, in person, or by deputy or by state bank examiner, shall take charge of any bank under the provisions of this act, he shall within thirty days there-

after, file in the office of the clerk of the circuit court of the county in which the bank is located, a detailed statement in the form prescribed in Section 10 of this act, of the assets and liabilities of such bank, and thereafter upon the first day of the term of each succeeding session of the circuit court of such county, and every sixty days in counties having circuit courts of continuous sessions, he shall file a report of his acts and doings in the administration of such bank since his last report; and any person, firm or corporation may, by petition addressed to the circuit court, have any act of such commissioner reviewed by the court, in the same manner and with the same rights and powers as would have attached had such commissioner been a receiver appointed by the court."

The part of the statute just quoted has not been changed since its enactment by the general assembly in 1912, (Section 17, chapter 4, Acts 1912), except that the title of the commissioner has been changed.

The ramifications of the 1912 Act were discussed by the Court in the case of Cartmell v. Commercial Bank & Trust Co., 153 Ky. 798, 156 S. W. 1048. In speaking of the liquidation of insolvent banks by a receiver as contrasted with their liquidation by the banking commissioner under the 1912 Act, it was pointed out in that case that, if any difference is to be found, it is in favor of liquidation by the commissioner, for the reason that liquidation under him is not only more expeditious and less cumbersome, but is also less expensive.

Numerous cases involving the 1912 Act, and particularly Section 17 (165a-17 of the Statutes) thereof, have arisen since the Cartmell case. It has been pointed out frequently that the liquidation of an insolvent bank is carried on under the supervision of the circuit court and is a special proceeding. Bridges v. Wilhoit, 277 Ky. 671, 126 S. W. (2d) 1074, and cases cited therein. See also McIntosh v. Wilhoit, Banking Commissioner, 279 Ky. 675, 132 S. W. (2d) 39.

It was held in the case of Ex parte Smith, Banking Commissioner, 160 Ky. 83, 169 S. W. 582, 584, that the commissioner is authorized to dispose of real estate either publicly or privately, as well as personal property, of an insolvent bank without obtaining the consent

or direction of the court, but he is required to report his acts to the court. As to the report of the commissioner following the sale of real property, it is said in the Smith case:

"Under the Banking Act, the banking commissioner is required to report all his acts and doings in the administration of the bank's affairs, at stated intervals to the circuit court of the county in which the bank is located; and it is further provided that any person, firm, or corporation may, by petition addressed to and filed in the circuit court, have any act of such commissioner reviewed by the court, in the same manner and with the same rights and powers as would have attached had such commissioner been a receiver appointed by the court.

"As the court gathers the legislative intent from the language of the Banking Act, the only distinction in this respect between a receiver and the banking commissioner is that the latter may act without an order of court, whereas a receiver acts only in obedience to the orders of the court; but, after the commissioner has acted, then his acts are subject to review as a receiver's acts. The report filed by the banking commissioner should be permitted to lay over for a reasonable time before confirmation, in order that any one desiring so to do may file his petition; and the filing of a petition, as provided for by the Banking Act, would have the same effect and be treated in the same manner, as respects procedure, as exceptions filed to a report of sale of the commissioner or receiver of the court. If no such petition be filed within a reasonable time, by way of exception to the report of the banking commissioner, it should then be approved and confirmed by the circuit court, and, where real estate has been sold, the banking commissioner should be directed to execute conveyance thereof in conformity to his report, in the same manner as is required by law when real estate is sold pursuant to a judgment of the circuit court."

It will be noted from the foregoing quotation that the Court took the position that the acts of the commissioner were subject to review the same as a receiver's acts after he acts in selling property. While the question before us was not directly before the Court in

the Smith case, supra, that case involving primarily the right of the banking commissioner to sell real property, we think that it is clear from the part of that opinion just quoted that the Court contemplated that, once the commissioner filed his report of sale, the sale should be treated from then on just as would be treated a sale made by a receiver.

The appellant stresses the case of Williamson v. Berry, 8 How. 495, 49 U. S. 495, 496, 547, 12 L. Ed. 1170. That case involved the sale of property by a trustee under a will. By special legislative enactment the trustee was given power to sell real property subject to confirmation by the court. The trustee was not an officer of the court and the sale was not held pursuant to court order. In stating that the sale was not a judicial sale, the court said:

"And in no event could a sale by Clarke, in conformity with the order, have been a judicial sale, but simply a sale by a private individual authorized to make it under acts passed for his relief, and assented to by the Chancellor, for the purpose of ultimately substantiating and verifying by a court of record the transfer of the property. It was a sale made without process, not by an officer in any sense of the word, but by a private person to a private person, after negotiation between them, and done by one of them, who had only in a particular way the assent of the Chancellor to sell."

It is pointed out in the Introductory Statement on Judicial Sales, 16 R. C. L. page 6, that what may accurately be denoted a judicial sale is not very well settled. See also Note 135 Am. St. Rep. 918. The Williamson case, supra, is cited in support of the statement that a judicial sale must be based upon a judicial order, decree or judgment directing that property be sold as distinguished from judicial assent to the sale of property under statutory provisions. While the sale under consideration may not embody all of the characteristics just mentioned, we are of the opinion that a sale by the banking commissioner or his agent should be treated as coming within the scope of a judicial sale after it is reported to the Court. As indicated, it is our conclusion that this rule is consistent with the part of the opinion in the Smith case, supra, heretofore quoted. It must be remembered that the Court had before it in that case

the question of whether or not the Banking Act of 1912 authorized the commissioner to sell real property. The Court construed the Act as meaning that it did confer such a power, and in so doing it went further and expressed the view as to how the sale should be treated following the time when the commissioner reported his acts to the court. We are of the opinion also that this conclusion would in no way hamper the banking commissioner in the liquidation of an insolvent bank. It is not to be presumed that the legislature intended that the court should perform a mere perfunctory act when it provided in Section 165a-17 of the Statutes for the review of the commissioner's acts by the court.

The case of Chapman, Commissioner of Insurance and Banking, v. Guaranty State Bank, Tex. Com. App., 267 S. W. 690, presents a discussion of some of the questions involved in the case at bar, though under the Texas statute the banking commissioner was authorized to sell property upon the order of the district court if in session, or the judge thereof, if in vacation. In that case it was said that, while the commissioner may negotiate the terms of the sale, it is the order of the court or judge which gives effectiveness to the contract. Under our statute the commissioner has broad powers in arranging for the sale of the property, but the sale is not actually consummated until reported to and approved by the court.

It follows from what has been said that there is no merit in the contention that the cause should not have been transferred to equity.

Wherefore, for the reasons given herein, we are of the opinion that the judgment should be and it is affirmed.